UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RAMJ CONSTRUCTION, L.L.C. | CIVIL ACTION |
| VERSUS | |
| SEOLA ENTERPRISES, INC., ET AL. | NO.: 17-01789-BAJ-RLB |

## RULING AND ORDER

Before the Court is the **Motion to Dismiss (Doc. 11)**, filed by Defendants, Covenant General Contractors, Inc. ("Covenant"), Quaternary Resource Investigations, LLC ("QRI"), and United Fire and Casualty Company ("United Fire") (collectively "Defendants"). The Court notes that Defendant, Seola Enterprises, Inc. ("Seola") is not a party to the motion. Defendants seek a dismissal of the claims brought by Plaintiff, RAMJ Construction, L.L.C. ("RAMJ"), for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 11). RAMJ filed an Opposition. (Doc. 15). Oral argument is not necessary. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the following reasons the **Motion to Dismiss (Doc. 11)** is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

On or about October 3, 2016, RAMJ alleges that Covenant entered into a prime contract with the United States Army Corps of Engineers ("the Corps") to haul and install FEMA Mobile Units ("the Project"). (Doc. 1 at ¶ 7). In accordance with the Miller Act, 40 U.S.C. § 3131, RAMJ alleges that Covenant provided to the Corps, Payment Bond No. 54-205987 on the Project in the amount of $15,000,000; the Bond was issued by United Fire. (*Id.* at ¶ 8).

Thereafter, Covenant allegedly entered into a subcontract ("Covenant/QRI Subcontract") or joint venture with QRI to manage and/or perform some of the work on the Project. (*Id.* at ¶ 9). On or about November 4, 2016, Covenant then employed Seola via a subcontract agreement ("Covenant/Seola Subcontract") to perform certain work on the Project. (*Id.* at ¶ 10). In November 2016, Seola employed RAMJ ("RAMJ Agreement") to perform certain work on the Project, to share profits, and for financing purposes. (*Id.* at ¶ 11)

RAMJ alleges that it substantially performed its work on the Project in a good and workmanlike manner on or before January 17, 2017. (*Id.* at ¶ 12; *see* Doc. 2). RAMJ further alleges that it has not received payment for work performed and invoiced for the Project in the approximate amount of $392,585.28. (*Id.* at ¶ 14). RAMJ claims to have submitted invoices directly to Seola, Covenant, and/or QRI. (*Id.* at ¶ 13). According to RAMJ, on or about June 12, 2017, it sent Notice of Amounts Due on the Project to Seola and Covenant; and on or about June 26, 2017, it sent a Notice to United Fire. (*Id.* at ¶ 15).

On December 21, 2017, RAMJ filed suit against Seola, Covenant, QRI, and United Fire. (Doc. 1). RAMJ's complaint alleges a breach of contract claim under Louisiana Civil Code Article 1994, a Prompt Pay claim under 48 C.F.R. 52.232.-27 and La Rev. Stat. § 9:2784, and a Miller Act claim under 40 U.S.C. § 3131, *et seq.* against all Defendants. (*Id.*).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable

to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

III. DISCUSSION

A. Breach of Contract

As an initial matter, Covenant, QRI, and United Fire argue that RAMJ has not alleged that it entered into a contract with the Defendants to perform work on the Project; thus, RAMJ's complaint cannot survive a breach of contract, Miller Act or Prompt Pay claim. (Doc. 11-1 at p. 5). RAMJ's complaint asserts that it has a contract with Covenant and QRI "through oral agreements and course of dealings." (Doc. 1 at ¶ 20). RAMJ further asserts that it assumed the obligations to perform work under the Covenant/Seola Subcontract, that Seola assigned RAMJ rights to receive payment under the Subcontract, and that it sent invoices directly to Covenant and dealt directly with Covenant regarding work on the Project. (Doc. 15 at p. 5).

Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code Ann. art. 1906. In Louisiana, unless mandated by law, there is no formality for a contract. However, the party who demands performance of a contract must prove that it exists. La. Civ. Code Ann. art. 1831. Furthermore, the elements that must be proven in order for a plaintiff to recover for breach of contract are: "(1) the obligor's undertaking an obligation to perform; (2) the obligor failed to perform the obligation (the breach); and (3) the failure to perform resulted in damages to the obligee." *Denham Homes, L.L.C. v. Teche Fed. Bank*, 2014-1576 (La. App. 1 Cir. 9/18/15), 182 So.3d 108, 119; *see* La. Civ. Code art. 1994.

Here, because the law does not prescribe a formality for construction contracts, and because the burden of proving that a contract exists is on RAMJ, the Court finds that RAMJ has plausibly pleaded that an oral contract exists between it and Covenant and QRI. *See In re Tasch, Inc.*, 46 F. App'x 731 (5th Cir. 2002) (discussing oral construction contracts in Louisiana); *Amitech U.S.A., Ltd. v. Nottingham Const. Co.*, 2009-2048 (La.App. 1 Cir. 10/29/10, 27), 57 So.3d 1043, 1063 (same); *Cajun Constructors, Inc. v. Fleming Const. Co., Inc.*, 05–2003, p. 8 (La.App. 1 Cir. 11/15/06), 951 So.2d 208, 214 (citing *Pelican Electrical Contractors v. Neumeyer*, 419 So.2d 1, 5 (La.App. 4 Cir.), *writ denied*, 423 So.2d 1150 (La.1982)) (same). Particularly, RAMJ's Complaint provides that "[t]hrough oral agreements and course of dealings, Covenant and QRI are obligated to pay RAMJ for the work RAMJ performed on the project." (Doc. 1 at ¶ 20).

It is alleged that each party accepted an obligation to perform work on the Project; it is also alleged that Covenant and QRI breached their obligation to pay RAMJ for the work performed on the Project; and it is further alleged that Covenant's and QRI's failure resulted in damages to RAMJ in the amount of $392,585.28 that is due to RAMJ. (*Id.* at ¶¶ 20–23). At this stage of litigation, the Court cannot assess whether an oral contract actually exists between the parties without adequate discovery. *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999) (noting that whether a contract exists involves both questions of fact - such as the intent of the parties - and questions of law-such as whether the facts as found constitute a contract). The Court notes that United Fire was not included in the breach of contract claim. The Court, therefore, concludes that RAMJ has plausibly

pleaded that a contract exists. The breach of contract claim shall remain in this action.

**B. Prompt Pay Claims[1]**

Covenant and QRI argue that because RAMJ did not have a *written contract* with them, RAMJ has failed to assert a claim under 48 C.F.R. 52.232-27 ("FAR 52.232–27") and La. Rev. Stat. § 9:2784 for non-payment of its invoices. (Doc. 11-1 at p. 8). Covenant and QRI further argue that RAMJ has failed to allege that the work that was performed on the Project did not constitute improvements to immovables used for residential purposes, which is required to assert a claim under La. Rev. Stat. § 9:2784(D). (*Id.* at p. 9). RAMJ's complaint provides that Covenant and QRI are obligated to pay RAMJ no later than seven days from receipt of payment from the Corps under FAR 52.232–27(c), and no later than fourteen days from same under La. Rev. Stat. § 9:2784(C). (Doc. 1 at ¶ 24).

*1. Federal Prompt Pay Claim*

The federal "prompt pay for construction contracts" statute provides in pertinent part:

> (c) Subcontract clause requirements. The Contractor shall include in each subcontract for property or services (including a material supplier) for the purpose of performing this contract the following:
>
> (1) Prompt payment for subcontractors. A payment clause that obligates the Contractor to pay the subcontractor for satisfactory performance under its subcontract not later than 7 days from receipt of payment out of such amounts as are paid to the Contractor under this contract.

---

[1] The Court notes that RAMJ failed to brief or address its breach of contract claim and its Prompt Pay claims in its opposition, all of which Defendants ask the Court to dismiss. (Doc. 15). However, Rule 12 does not by its terms require an opposition; thus, failure to oppose certain claims in a 12(b)(6) motion is not in itself grounds for granting the motion. *See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012). *See* Fed.R.Civ.P. 12(b)(6).

FAR 52.232-27(c)(1). The Court finds that not only has RAMJ failed to plausibly plead that its alleged oral contract between Covenant and QRI includes the referenced "subcontract clause requirements," it also failed to plead that the Covenant/Seola Subcontract included this language.

Furthermore, many courts have held that the Prompt Payment Act, including FAR 52.232–27, does not provide for a private right of action for subcontractors against general contractors, such as Covenant. *See Masonry Sols. Int'l, Inc. v. DWG & Assocs., Inc.*, 2016 WL 1170149, at *4 (E.D. La. Mar. 25, 2016) ("DVA cites several cases expressly holding that [the Federal Prompt Payment Act] does not create an independent cause of action . . . . The Court's own research buttresses that legal conclusion."); *U.S. ex rel. Duncan Pipeline, Inc. v. Walbridge Aldinger*, 2013 WL 1338392, at *17–18 (S.D. Ga. Mar. 29, 2013). *See e.g., U.S. ex rel. IES Comm., Inc. v. Cont'l Ins. Co.*, 814 F.Supp.2d 1, 2–3 (D.D.C. 2011) (citing *L & W Supply Corp. v. Dick Corp.*, 2009 WL 1139569 at *1 (N.D. Fla. Apr. 27, 2009)) (finding a "unanimous conclusion that the [Prompt Payment Act] does not create a private right of action."). *See also C & H Contracting of Miss., LLC v. Lakshore Eng'g Servs., Inc.*, 2007 WL 2461017, at *1 (S.D. Miss. Aug. 24, 2007) ("The few courts addressing the matter have found that there is no private right of action between contractors under the Prompt Payment Act.").

RAMJ has not advanced any argument as to why a purported violation of FAR 52.232–27 would permit a private right of action under the Prompt Payment Act. The Court agrees with the overwhelming majority of courts that have previously

7

addressed this issue, finding that the Prompt Payment Act does not create a private right of action. Accordingly, RAMJ's FAR 52.232–27 claim is dismissed.

### 2. *Louisiana Prompt Pay Claim*

As to the Louisiana Prompt Pay Act, when a prime contractor (Covenant) receives any payment from the owner (the Corps) for improvements to an immovable the contractor (Covenant) shall promptly pay such monies received to each subcontractor (QRI and/or Seola) in proportion to the percentage of work completed. La. Stat. Ann. § 9:2784(A). Further, whenever a subcontractor (QRI and/or Seola) receives payment from the contractor (Covenant), the subcontractor (QRI and/or Seola) shall promptly pay such monies received to each sub-subcontractor (RAMJ) in proportion to the work completed. *Id.*

Here, RAMJ has sufficiently pleaded that it is a sub-subcontractor through the Covenant/Seola Subcontract; likewise, the Court previously found that RAMJ pleaded the existence of an oral contract between it and Covenant and QRI, thus it has pleaded that it is plausible that it may be classified as a subcontractor directly below Covenant. At this stage, however, the Court cannot determine with certainty RAMJ's classification because such a determination would require a much more fact-intensive and evidentiary-based analysis which would be inappropriate at the Rule 12(b)(6) stage.[2]

---

[2] The Court notes that "[t]he language of the Louisiana Prompt Pay Act clearly distinguishes payments owed by a contractor to *his* subcontractor from payments owed by a subcontractor to *his* sub-subcontractor." *Masonry Sols.*, 2016 WL 1170149, at *4 (quoting *Double R & J Trucking Serv., Inc. v. Patton Installations of Fla., L.L.C.*, 2015 WL 2452343, at * 3 (E.D. La. May 21, 2015)). Consequently, in *Double R & J Trucking*, the court dismissed claims brought pursuant to the Louisiana Prompt Pay Act by a sub-subcontractor against contractors higher in the chain with whom the sub-subcontractor had no direct contract. *See id.*

Section 9:2784(C) penalizes a contractor or subcontractor, who without reasonable cause, fails to make any payment to his subcontractors within fourteen consecutive days of the receipt of payment from the owner for improvements to an immovable. La. Stat. Ann. § 9:2784(C).

The Court finds that RAMJ has not sufficiently pleaded that Covenant and QRI failed to pay any subcontractor (or sub-subcontractor) within fourteen days of receipt of payment from the Corps. As provided above, RAMJ's complaint need not set out detailed factual allegations, but something more than labels and conclusions, and a formulaic recitation of the elements is required. *Twombly*, 550 U.S. at 555. Here, RAMJ's complaint does not allege that Covenant or QRI have been paid by the owner. The complaint does not provide a date from which fourteen days may be ascertained to determine if it is plausible that RAMJ was not paid within fourteen days of Covenant's or QRI's receipt of payment. Furthermore, the complaint merely recites the requirements to assert a Louisiana Prompt Pay claim. (Doc. 1 at ¶ 24). Without more, the Court cannot assume that Covenant and QRI were actually paid, nor can the Court assume that, without reasonable cause, Covenant and QRI failed to make any payment to its subcontractors within fourteen days of receipt of payment from the Corps.

Lastly, § 9:2784(D) provides that "[t]he provisions of this Section shall not be applicable to improvements to an immovable that is used for residential purposes." As stated above, Defendants argue that RAMJ alleged that the Project involved the hauling and installing of "FEMA Mobile Housing Units." (Doc. 1 at ¶ 7). Defendants further argue that, essentially, RAMJ has pleaded that the work did not involve

9

improvements to immovables,[3] and if it did, that the FEMA Mobile Housing Units, by their nature, were for residential use, which is specifically excluded from § 9:2784. The Court agrees. Therefore, the Louisiana Prompt Pay Act claim is also dismissed.

### C. Miller Act Claim

Defendants argue that under the Miller Act, RAMJ would be considered a second tier subcontractor and would be required to provide notice to the prime contractor (Covenant) and the surety (United Fire) within 90 days of the last day it performed work on the Project before it would have a right to assert a Miller Act claim. (Doc. 11-1 at p. 10). RAMJ argues that because it has a contract with Covenant, it is classified as a first tier subcontractor under the Miller Act. (Doc. 16 at pp. 4–5). As a first tier subcontractor, RAMJ argues that it was only required to file its action within one year of its last work on the Project. (*Id.* at p. 5).

The Miller Act confers on "[e]very person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131" who has not been paid in full within 90 days after the date of the last performance, a right to "bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought" if certain conditions are met. 40 U.S.C. § 3133(b)(1). This right extends to those parties "having direct contractual relationship with a *subcontractor* but no contractual relationship express or implied with the contractor." *U.S. for Use & Benefit of Gulf States Enterprises, Inc. v. R.R.*

---

[3] Mobile homes have been traditionally classified as movables under Louisiana Law. *See e.g.*, La. Stat. Ann. § 9:1149.4 (in which the legislature set forth the actions necessary for a mobile home to become an immovable). *See also Hunt v. McNamara*, 494 So. 2d 1279, 1282 (La. Ct. App. 1986).

*Tway*, 938 F.2d 583, 586 (5th Cir. 1991) (quoting § 3133(b)(2)). In other words, to be a "subcontractor" and come within the protection of the Miller Act, an entity must have a direct contractual relationship with either the prime contractor or a subcontractor of the prime contractor. *R.R. Tway*, 938 F.2d at 586–87 (citing *J.W. Bateson Co. v. United States*, 434 U.S. 586 (1978)); *United States use of Gold Bond Bldg. Products, Div. of Nat. Gypsum v. Blake Constr. Co.*, 820 F.2d 139 (5th Cir. 1987).

Further, the United States Court of Appeals for the Fifth Circuit has made clear that an action under the Miller Act must be instituted on the general contractor's bond. *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 220 (5th Cir. 2012) (a "subcontractor's right to sue for recovery under the Miller Act is traditionally limited to a general contractor's payment bond"); *J.D. Fields & Co., Inc. v. Gottfried Corp.*, 272 F.3d 692, 696 (5th Cir.2001)(same); *Superior Sys. Inc. v. Levy Wrecking Co., Inc.*, 1994 WL 142113, at *1 (8th Cir. Apr. 22, 1994)(unpublished)) ("While we have recognized that sub-subcontractors are entitled to recover under the Miller Act, their right to sue has traditionally been limited to suit on the prime contractor's payment bond.") (gathering cases). Moreover, the Miller Act further provides that a claim by a subcontractor must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action. *Id.* § 3133(b)(4).

Here, RAMJ has sufficiently alleged that it falls under the ambit of the Miller Act. First, RAMJ has sued the subcontractor (Seola and QRI) and the general contractor (Covenant) pursuant to the payment bond provided for in the *prime*

*contract*.[4] (Doc. 1 at ¶¶ 1, 7). Second, RAMJ has alleged that it is an entity that has a direct contractual relationship with either the prime contractor (Covenant) or a subcontractor of the prime contractor (Seola). *See e.g., Asbestos Abatement Contractors, Inc. v. Home Guard Envtl. Restoration Servs., Inc.*, 2012 WL 1664549, at *5 (E.D. La. May 11, 2012). Third, RAMJ has alleged that Covenant and United Fire have failed to pay it sums justly due and owing within 90 days since it last provided labor or materials on the Project. (Doc. 1 at ¶ 27). Lastly, the last day that RAMJ allegedly performed work on the Project was on or about January 17, 2017; thus, this action was timely instituted on December 21, 2017. (Docs. 1, 2).

Nonetheless, there is a dispute between the parties regarding whether RAMJ is appropriately classified as a second tier subcontractor or a first tier subcontractor. (Doc. 11-1 at p. 13; Doc. 15 at p. 5). This is particularly important because a second tier subcontractor, also known as a sub-subcontractor, must comply with the mandatory notice requirements contained in the Miller Act. Specifically, the Miller Act provides that a sub-subcontractor—*i.e.*, a person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor—may bring an action on the payment bond after giving *written notice* to the contractor within 90 days from the date of last performance. *Id.* at §3133(b)(2) (emphasis added). "The giving of such notice is a condition precedent to a supplier's right to sue on the payment bond." *U.S. ex rel. Sun Coast Contracting*

---

[4] With respect to United Fire, the Court notes that while a Miller Act surety is not a party to a contract between a subcontractor and a contractor, it nonetheless stands in the shoes of the contractor and is bound by its dealings for these purposes. *Jems Fabrication, Inc., USA v. Fid. & Deposit Co. of Maryland*, 566 F. App'x 298, 302 (5th Cir. 2014) (internal citations omitted).

12

*Servs., LLC v. DQSI, LLC*, 2014 WL 5431373, at *2 (M.D. La. Oct. 22, 2014) (quoting *Liles Const. Co. v.. United States*, 415 F.2d 889, 890 (5th Cir. 1969).

It is apparent on the face of the complaint that RAMJ has not met these notice requirements given that work on the project was completed on or about January 17, 2017, and RAMJ has alleged that the written notices were not mailed until on June 12, 2017 (Seola and Covenant) and on June 26, 2017 (United Fire), which were well after the 90 day notice period. (Doc. 1 at ¶ 15). However, because RAMJ alleges a direct contractual relationship with Covenant by oral agreement and course of dealings, it has sufficiently alleged that the 90 day notice period may be inapplicable. Therefore, Defendants' motion to dismiss is denied with respect to the Miller Act claim.

IV. CONCLSION

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss (Doc. 11)** is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the federal and state Prompt Pay claims brought against Covenant, QRI, and United Fire are hereby **DISMISSED**. The breach of contract and Miller Act claims remain in this action against all Defendants.

Baton Rouge, Louisiana, this 2nd day of July, 2018.

---
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA